IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| KELLY A. BRENNAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:10-CV-020 |
| | ) |
| AMERICAN EAGLE AIRLINES, INC., | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This employment discrimination case was originally filed in the Circuit Court of Blount County, Tennessee and was removed to this court in January 2010. Defendant American Eagle Airlines has moved for summary judgment. [Doc. 19]. That motion and the defendant's motion to strike [doc. 44] have been fully briefed and are ripe for the court's consideration. For the reasons that follow, the summary judgment motion will be granted, the motion to strike will be denied as moot, and this civil action will be dismissed.

I.

*Background*

The defendant terminated plaintiff's employment in December 2008. At the time of her firing, plaintiff was 47 years old and was the general manager of defendant's Chattanooga, Tennessee airport facility. Plaintiff alleges that she was terminated because of her age and gender in violation of the Tennessee Human Rights Act, TENN. CODE ANN. § 4-

21-101 *et seq.* ("THRA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Her amended complaint also alleges a claim for "common law intentional wrongful discharge" under what appears to be a whistleblower-type theory. That claim has subsequently been abandoned. [Doc. 42, p.9] ("Plaintiff concedes that no facts support a claim for retaliatory discharge on the basis of being a whistleblower and hereby abandons that claim.").

The defendant hired plaintiff as a flight attendant in 1987. She received several promotions and eventually became the general manager of defendant's Knoxville, Tennessee facility in 1999. Beginning in 2000, plaintiff managed both the Knoxville and Chattanooga stations.

General managers report to a regional director. The responsibilities of a general manager include employee supervision, record keeping, equipment maintenance, and documentation of compliance with Federal Aviation Administration ("FAA") requirements.

There were occasional employee complaints regarding plaintiff's management style. According to plaintiff, the defendant investigates every employee complaint. To her knowledge, every such issue prior to March 2008 was resolved in her favor.

Beginning in January 2008, plaintiff's regional director was Ernest Overbeck. Overbeck states that he received a petition in March 2008 concerning the plaintiff's management style. The petition was signed by 23 employees. According to plaintiff, Overbeck at the time told her that the petition "was nothing."

Also in March 2008, the defendant held a conference call with its general managers to review FAA audits of its "Weight and Balance" program. The defendant uses two separate documents to record the amount and location of weight carried by each aircraft during each flight. One document, the "load sheet," is created manually by an employee. The other document, the "manifest," is computer-generated by an "EWBS" system. Plaintiff admits that these forms are "important." They are FAA-required, and the load sheet and manifest totals for each flight must match.

A March 17, 2008 email to general managers from defendant's vice president of customer service Larry Terrazas summarized the "Weight and Balance" conference call discussion and "your role in compliance with our program" in material part as follows:

> 2. A recent FAA audit in some of our Texas cities noted that the manual load sheet date differed from the EWBS output. This suggests that the manual load sheet was not being filled in fully or correctly.
>
> 3. Review your 90 day files. If there are discrepancies, note them in the file, coach and counsel the employee and document what action has been taken.
>
> 4. If there is a material weight discrepancy between the manual load sheet and the EWBS output, notify Larry Terrazas to determine if a self disclosure to the FAA is required.

[Doc. 42, ex. 5]. It is defendant's position that general managers were instructed to amend any incorrect documents rather than replacing and destroying them, but according to plaintiff those instructions were initially unclear. Prior to the issuance of Mr. Terrazas's email, plaintiff states that is was her understanding that if a review found any discrepancies in the FAA-mandated documents, the incorrect forms were to be destroyed and replaced with

3

correct ones. Plaintiff claims that other general managers shared this misunderstanding, but at her deposition she was unable to name any such person.

Charles Grube is the defendant's manager of ground safety. His affidavit states that the FAA audited defendant's Knoxville station on March 16, 2008, because an employee had reported that plaintiff was directing the alteration of prior load sheets. In response, the defendant conducted an investigation on March 17 through 19, 2008. Grube and Hal Jerklin, defendant's auditor of field service procedures, interviewed eight Knoxville employees including the plaintiff. According to Grube's affidavit,

> Knoxville employees consistently stated in the investigation that they had been instructed by Ms. Brennan to audit the load sheets against the manifest created by the EWBS and to make sure the numbers "matched." Where the discrepancy was small, they claimed they were told to add numbers to the load sheet to make them match the manifest. Where there was a significant difference, the employees stated they were instructed to create new load sheets and to discard the original copies.
>
> . . .
>
> Based on the information gathered in the investigation, I concluded that Ms. Brennan had directed her agents to alter weight and balance records and to discard the original incorrect documents.

[Doc. 22, p.2-3]. At her deposition, plaintiff acknowledged that the defendant's concern regarding destruction of federally-mandated records was "legitimate," and that she had no reason to think that Jerklin or Grube were biased against her during their investigation.

By a "letter of concern" dated April 2, 2008, Overbeck demoted plaintiff. That letter stated in material part,

4

> On March 16, 2008, the FAA conducted an unfavorable audit, which primarily showed the station's inconsistency in completing the Company's weight and balance load sheet information. Although you correctly summarized procedures for these load sheets, in writing, initially, it was determined that you had not ensured these forms were completed accurately at the time of each departing flight. It was also determined that you gave erroneous instructions to your team, contrary to these instructions you were provided. Additionally, it was confirmed that you actually participated in the incorrect actions taken in an effort to correct the discrepancies on the load sheet forms . . . .
>
> In addition to the above information, you have been the subject of various Network and individual complaints by employees, expressing their displeasure with your approach and interactions with them. You were previously counseled about your approach techniques and the importance of communicating in a positive manner. You agreed to take the necessary steps to correct this performance issue, however, the overall perception from your team has remained negative.
>
> Your actions as described above show use of poor judgment and leadership skills on your behalf. Therefore, effective April 2, 2008[,] you will no longer be responsible for the [Knoxville] location. However, I am offering you the opportunity to continue to be the General Manager for the [Chattanooga] operation . . . provided you make a commitment to successfully manage the operation in a manner consistent with Company policies and procedures. . . .
>
> Kelly, I urge you to carefully consider your willingness and commitment to follow all Company policies and procedures as described above, and to utilize the resources available to managers when questions as to proper procedure arise, as failure to do so may require corrective action up to and including jeopardizing your employment here at American Eagle.

[Doc. 21, ex.1]. Plaintiff was replaced as the Knoxville general manager by "Stephanie Marsh, a younger female" age 34. [Doc. 20, ex.2, p.230; doc. 42, ex.3, p.6].

On November 17, 2008, an employee of the defendant's Chattanooga station, Kelly Stewart, contacted Overbeck to report that plaintiff had directed her and another agent, Steven Brown, to rewrite two prior "de-icing event logs." As with the load sheets, the de-

5

icing log is a FAA-mandated document that is required to be maintained accurately. Jerklin and human resources representative Amy Leonard interviewed plaintiff, Stewart, and Brown regarding Stewart's claim.

Stewart and Brown each reported that plaintiff directed them to complete new de-icing logs reflecting an acceptable "freeze point" within the range deemed safe by the FAA. Stewart and Brown further reported that plaintiff then folded the original, erroneous de-icing logs and walked away - the implication being that plaintiff had again destroyed FAA-mandated documentation. Plaintiff denies the agents' version of what happened, claiming instead that Stewart made up the story in retaliation for having been recently disciplined. Overbeck, Leonard, and the defendant's human resources department nonetheless concluded that Stewart and Brown's statements were more credible.

On December 10, 2008, Overbeck sent a "Loss of Confidence" letter to plaintiff terminating her employment. That letter provided in material part,

> On November 19, 2008, the Company received allegations that you instructed two of your employees to falsify information pertaining to a de-ice event log dated October 30th and November 17th. The employees stated that on the dates listed above, they completed the required glycol tests and documented the readings on an event log as per Company policy. . . . They stated they were not aware at the time that the freeze range point reading they entered on the form did not fall within the acceptable FAA range of -20 to -35.
>
> As part of a company investigation you were questioned on 12/4/08 about the allegations. During questioning you stated that you reviewed the original event logs with the agents so they could see the discrepancies. You admitted you gave both agents a blank de-ice event log but denied that you asked them to redo it. You stated you asked them, "if they felt comfortable doing it," then walked out of the room. Both agents corroborated that during your discussion,

6

> you informed them that the original de-ice paperwork was "unacceptable" and requested they complete a new form, this time reflecting a freeze point range that fell within the FAA guidelines.
>
> A review of your personnel file shows that you were issued a Letter of Concern on April 2, 2008.
>
> In any company, it is essential that management employees perform well under difficult circumstances and handle all assignments in a professional manner. Management level employees carry the additional responsibility of serving as an example of behavior and integrity for their employees.
>
> Based on your actions as described above, I have lost confidence in your ability to handle yourself and your responsibilities in a manner consistent with the Company's expectations. Specifically, your actions are in violation of Rules of Conduct # 16.
>
> Rule # 16 - Misrepresentation of facts or falsification of records is prohibited.
>
> Your employment with American Eagle is hereby terminated effective December 10, 2008.

[Doc. 21, ex.2]. Plaintiff was temporarily replaced as the Chattanooga general manager by Stewart ("a younger female") and was permanently replaced by a man.

According to her deposition testimony, plaintiff has no reason to think that Jerklin and Leonard were biased against her or that they did not conduct a fair investigation. Plaintiff further acknowledged that falsification of documents is legitimate grounds for termination.

II.

*Summary Judgment Standard*

Defendants' motion is brought pursuant to Federal Rule of Civil Procedure 56, which governs summary judgment.[1]  Rule 56(a) sets forth the standard for governing summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion."  This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically-stored information.  Fed. R. Civ. P. 56(c)(1)(A).  Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

The movant must first demonstrate that the non-moving party has failed to establish an essential element of that party's case for which it bears the ultimate burden of proof at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the moving party

---

[1] Federal Rule of Civil Procedure 56 was amended effective December 1, 2010.  The Advisory Committee Notes to the 2010 amendments reflect that the standard for granting summary judgment "remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying [that standard]."  Fed. R. Civ. P. 56 advisory committee's note.  The summary judgment motion in this case was filed after the revised version became effective and therefore is governed by that version.  *Cf. Wheeler v. Newell*, 407 F. App'x 889, 891 n.3 (6th Cir. 2011) ("The motion for summary judgment in this case was filed prior to December 1, 2010, and is governed by the version of Rule 56 that was in effect at the time the motion was filed.").

8

carries that initial burden of showing that there are no genuine issues of material fact in dispute, the non-moving party must then present specific facts demonstrating a genuine issue for trial. *See Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In order to defeat a motion for summary judgment, the non-moving party must present significantly probative evidence in support of its complaint. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-movant's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *See id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *See id.* at 251-52.

"Where the defendant demonstrates that after a reasonable period of discovery the plaintiff is unable to produce sufficient evidence beyond the bare allegations of the complaint to support an essential element of his or her case, summary judgment should be granted." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992). "It is well settled that the non-moving party must cite specific portions of the record in opposition to a motion for summary judgment, and that the court is not required to search the record for some piece of evidence which might stave off summary judgment." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997).

III.

*Analysis*

As noted, plaintiff alleges that defendants terminated her on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964. Title VII makes it unlawful for most employers to "discharge any individual . . . because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1).

Plaintiff also brings suit under the THRA. THRA claims are analyzed under the same evidentiary framework as is used under Title VII. *See, e.g., Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996).

Plaintiff also alleges that she was terminated because of her age in violation of the ADEA, which prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). In *Gross v. FBL Financial Services*, 129 S. Ct. 2343, 2350-51 (2009), the Supreme Court clarified that an ADEA claimant ultimately bears the burden of establishing that her age was the "but-for" cause of the employer's adverse action.

A. *McDonnell Douglas*

At summary judgment, the court evaluates a Title VII claimant's inferential and circumstantial evidence using the familiar *McDonnell Douglas* burden-shifting approach. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] In *McDonnell Douglas* the

---

[2] Plaintiff has cited no *direct* evidence of discrimination.

Supreme Court established "the order and allocation of proof in a private, non-class action challenging employment discrimination . . . ." *McDonnell Douglas*, 411 U.S. at 800-03. A plaintiff must first establish a *prima facie* case of discrimination. *Id.* at 802. The elements necessary to make a *prima facie* showing will vary depending on the facts of each case and the type of discrimination alleged. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575-76 (1978). "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007).

Plaintiffs bear the burden of persuasion throughout the entire process. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000). If a plaintiff is able to establish her *prima facie* case, the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *Id.* at 792-93 (citation omitted). If the employer successfully provides such a reason, *McDonnell Douglas*'s regime then places the final burden on the plaintiff to "demonstrate by competent evidence" that the employer's proffered reason is in fact merely a pretext. *McDonnell Douglas*, 411 U.S. at 805.

### B. *Prima Facie* Case

To establish a *prima facie* case of age or gender discrimination, a plaintiff may show that: (1) she was a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for her position; and (4) she was replaced by someone outside the protected class, or that a person outside the protected class was treated more favorably. *See Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004).

Plaintiff has satisfied her *prima facie* burden. She is a member of protected classes based on her age and gender. She was subject to the adverse employment action of termination. The defense does not dispute that she was qualified for her position.

As for the fourth prong of her *prima facie* showing, the court deems it necessary to clarify in this case how plaintiff has met her burden and how she has not. Plaintiff *has* satisfied this prong by citing evidence that she was replaced by a female under the age of 40 and by a male.

Plaintiff *has not*, however, satisfied this prong by comparing herself to Charles Peach to show that a person outside the protected class was treated more favorably. Peach is currently the defendant's customer service manager at the Dallas - Fort Worth airport. In 2008, Peach was the general manager of defendant's Lubbock, Texas facility.

A 2008 FAA audit of that station revealed errors on completed load sheets. Also during Peach's time in Lubbock, a gate agent was fired for intentionally falsifying a load sheet. Peach was not disciplined for either of these issues. Plaintiff cites Peach as a

12

person outside the protected class who received more favorable treatment.

There are many problems with plaintiff's theory. Plaintiff was not terminated for a subordinate's erroneously-completed documents. She was fired for her own role in after-the-fact *falsification and destruction* of documents. As for the agent who falsified a load sheet in Lubbock, there is no evidence that Peach instructed her to do so. Instead, it was Peach who fired that worker once her misdeed came to light.

Peach reported to a different supervisor. There is no evidence that he directed any employee to falsify or destroy FAA-mandated documentation. There is no evidence of prior subordinate complaints about his leadership. There is no evidence that he had a prior disciplinary record. Peach's circumstances were far different from plaintiff's.

For purposes of the plaintiff's *prima facie* case, the person to whom plaintiff seeks to compare herself (Peach) must be "similarly situated" in all relevant respects. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992). Plaintiff and Peach were not similarly situated. *See Corell v. CSX Transp.*, 378 F. App'x 496, 502-03 (6th Cir. 2010) (employees were not similarly situated where they dealt with different supervisors, had different disciplinary records, and did not engage in conduct of comparable seriousness).

In sum, plaintiff's efforts to establish a *prima facie* case by comparing herself to Charles Peach fail. Plaintiff *has*, however, satisfied her *prima facie* burden by citing evidence that she was replaced by a female under the age of 40 and by a male. The burden now shifts to the defendant to articulate a legitimate nondiscriminatory reason for the firing.

13

### C. Legitimate Nondiscriminatory Reason

The defendant states that it fired plaintiff for her role in the falsification and destruction of FAA-mandated documents. Plaintiff concedes that, if true, this is a legitimate nondiscriminatory reason for termination.

### D. Pretext

*McDonnell Douglas*'s regime places the final burden on the plaintiff to "demonstrate by competent evidence" that the employer's proffered reason is in fact merely a pretext. *McDonnell Douglas*, 411 U.S. at 805. Pretext may be shown "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Plaintiff offers a number of arguments regarding pretext which she claims are illustrative of Overbeck's "pattern of discriminatory actions, or discriminatory animus, against her." Viewed singly or together, these arguments fail.

Plaintiff again seeks to compare herself to Charles Peach. According to plaintiff, if the reasons given for *her* termination were genuine, then surely Peach would have been fired as well. The court has already made clear that Peach and the plaintiff are not comparable. *See, e.g., Morton v. United Parcel Serv.*, 166 F. App'x 779, 782 (6th Cir. 2006) ("From the company's vantage point, [plaintiff] had received a second chance to learn from his mistake while [the comparator] had not."). Peach's circumstances were far different from

14

plaintiff's, and the fact that he was not terminated does not raise an issue regarding pretext.

Plaintiff next complains that Overbeck removed her from the Knoxville position through a "letter of concern," which she states is not a recognized method of discipline within defendant's employee handbook. However, criticism of the method used does not raise any genuine question in this case as to the veracity of the reasons given for her demotion.

Plaintiff next notes that the letter of concern referenced prior complaints from her subordinates, but she also states that Overbeck initially told her that the petition filed against her was "nothing." Plaintiff also states that defendant's senior vice president of customer service, Jon Snook, "said that it was the Knoxville investigation of the cargo load sheets that was really 'the straw that broke the camel's back.'" Evidence that a nondecisionmaker deemed one falsification/destruction incident to be more egregious than the other does not raise an issue as to pretext. The same is true as to Overbeck's comment regarding the petition, which he would have said prior to the cargo load documentation problem. "A defendant's proffered reason cannot be proved to be a pretext 'unless it is shown *both* that the reason was false, *and* that discrimination . . . was the real reason." *Harris v. Metro. Gov't of Nashville & Davidson County*, 594 F.3d 476, 486 (6th Cir. 2010) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)) (emphasis in original).

Plaintiff's conclusory allegations and subjective beliefs are insufficient grounds to deny summary judgment. *See Mitchell*, 964 F.2d at 585. Similarly, her disagreement with

15

the facts underlying her discharge is irrelevant. *See Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 502 (6th Cir. 2007). Plaintiff concedes that the defendant's concerns were legitimate and that the allegations against her, if true, were grounds for termination. Plaintiff further concedes that the defendant's investigations were unbiased and fair.

This court does not sit as a "'super personnel department,' overseeing and second guessing employers' business decisions." *See Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627-28 (6th Cir. 2006) (citation omitted). A claimant may not establish pretext merely by questioning the soundness of her employer's business judgment. *See Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir. 1986). The Sixth Circuit has adopted the "honest belief" rule concerning an employer's proffered reason for discharging an employee. *See, e.g., Smith v. Chrysler Corp.*, 155 F.3d 799, 806-07 (6th Cir. 1998). "An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied 'on the particularized facts that were before it at the time the decision was made.'" *Majewski v. Automatic Data Processing*, 274 F.3d 1106, 1117 (6th Cir. 2001) (quoting *Smith*, 155 F.3d at 807). "An employer need not prove that complaints or perceptions about an employee are true before using such complaints as a basis for action. As long as an employer honestly believes complaints about an employee are true, such complaints can serve as a justification for an employment action and will not be regarded as pretextual." *Koval v. Dow Jones & Co.*, 86 F. App'x 61, 67-68 (6th Cir. 2004) (citing *Braithwaite v. Timken Co.*, 258 F.3d 488, 493-94 (6th Cir. 2001)).

Plaintiff has not carried her burden of demonstrating a genuine issue of material fact as to pretext. Summary judgment must accordingly be entered in defendant's favor.

### E. Christine Rocha-Davis

Lastly, the court notes that plaintiff has also attempted to show pretext through the affidavit of Christine Rocha-Davis. Ms. Rocha-Davis identifies herself as the former general manager of defendant's Lawton, Oklahoma and Wichita Falls, Texas facilities. According to her affidavit, Ms. Rocha-Davis was terminated for receiving an offensive email which other workers then viewed. She goes on to name four male employees (located in Wisconsin, Louisiana, Florida, and an unnamed state) who engaged in offensive racial or sexual conduct but were not fired.

Arguing that Ms. Rocha-Davis was not previously disclosed as a witness, the defense has moved [doc. 44] to strike her affidavit pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure. The court need not address the motion to strike because, even presuming that plaintiff would be allowed to use the affidavit, Ms. Rocha-Davis's statements are of no import. There is no proof that Ms. Rocha-Davis or any of the men cited in the affidavit reported to the same supervisor as plaintiff, or that the same decision-maker was involved. *See Schrand v. Fed. Pac. Elec.*, 851 F.2d 152, 156 (6th Cir. 1988) ("The fact that two employees of a national concern, working in places far from the plaintiff's place of employment, under different supervisors, were allegedly told they were being terminated

17

because they were too old, is simply not relevant to the issue in this case."). Further, neither Ms. Rocha-Davis nor the four male employees were accused of misconduct similar to the plaintiff in this case. *See id.* ("[T]here was no evidence . . . which . . . could logically or reasonably be tied to the decision to terminate [the plaintiff]."); *see also Johnson v. Interstate Brands Corp.*, 351 F. App'x 36, 41 (6th Cir. 2009) ("[P]laintiff's assertion that other employees might be able to establish a *prima facie* case of age discrimination in no way establishes that the defendant's reason for discharging plaintiff was pretext for age discrimination.").

## IV.

### *Conclusion*

For the reasons stated herein, the defendant's summary judgment motion will be granted. The pending motion to strike will be denied as moot. This case will be dismissed. An order consistent with this opinion will be entered.

ENTER:

                                                        s/ Leon Jordan
                                        United States District Judge

18

Case 3:10-cv-00020-RLJ-HBG Document 48 Filed 10/17/11 Page 18 of 18 PageID #: 917